**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven L. KAPLAN, M.D.,
Defendant–Appellant.**

**No. 84–1260.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1989.

Decided Feb. 7, 1990.

---

**3.** Of course, before the amendment became effective it had to be presented to Congress. 28 U.S.C. § 994(p).

Before CANBY, and NORRIS, Circuit Judges, and WILSON [1], District Judge.

WILSON, District Judge:

This is an appeal from a final judgment of conviction in a criminal case. Appellant, a medical doctor, was convicted of mail fraud in a scheme aimed at defrauding an insurance company and of prescribing controlled substances for reasons other than legitimate medical purposes. A five year sentence of unsupervised probation was imposed on August 7, 1984. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## FACTS

Appellant, Steven L. Kaplan, was a physician duly licensed to practice medicine in the state of Nevada. This case arose from two independent investigations being conducted by state and federal law enforcement agencies into appellant's medical and controlled substance prescription practices. The Federal Bureau of Investigation's (FBI) investigation of appellant centered around allegations that he was involved in and engaging in schemes aimed at defrauding various insurance companies. The FBI's investigation also concerned itself with the controlled substance prescription practices of appellant. A separate investigation of appellant's prescription practices was also conducted during this same time period by the Investigative Division of the state of Nevada.

The two mail fraud counts (Counts 1–2) arose from the investigation by the FBI, as did the first seventeen controlled substance distribution counts (Counts 3–19). Each of these counts was the result of the appellant's dealings with FBI Special Agent Rick P. Baken, who was acting in an undercover capacity using the name "Jimmy Sollow." Baken originally approached appellant on May 3, 1983, for the purpose of developing evidence regarding allegations that appel-

Robert W. Lueck, Las Vegas, Nev., for defendant-appellant.

Paul E. Wommer, Asst. U.S. Atty., Las Vegas, Nevada, for plaintiff-appellee.

**1.** The Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

lant was filing false insurance claims. Baken met with appellant eleven more times during the period of May 3 to June 8, 1983. On those occasions appellant prescribed numerous controlled substances even though no physical examinations were performed.

Counts 20 through 39, all of which charged appellant with separate counts of distributing a controlled substance by way of a prescription not issued in the usual course of professional practice and not for legitimate medical purpose, were based upon the investigation conducted by the Investigative Division for the state of Nevada. Counts 20 through 28 involved various controlled substances the appellant prescribed to David Buzzalini, a paid confidential operative utilizing the undercover name "David Charles."

Counts 29 through 39 involved dealings appellant had with Robert Nepolitan, a paid informant utilizing the name "Steve Watkins." Nepolitan met with appellant at least twelve times between December 7, 1982, and April 19, 1983, for the purpose of obtaining prescriptions for controlled substances. In May 1983, Nepolitan voluntarily approached the Investigative Division and provided that agency with information concerning the appellant. Nepolitan agreed to assist in the investigation of appellant and subsequently met with appellant three additional times. On June 15, 1983, Nepolitan gave appellant a bag of what purportedly was marijuana (in reality, it was commercial brand tea) in exchange for some prescribed controlled substances. Following this exchange, appellant was arrested.

Appellant now appeals his conviction on five grounds: (1) insufficiency of the evidence as to counts 20–39; (2) the district court's refusal to sever the counts based on the state investigation from the counts based on the federal investigation; (3) the district court's denial of a motion to suppress for a warrantless search; (4) the district court's denial of a motion to suppress for a subsequent search; and (5) the district court's failure to give a jury instruction.

## DISCUSSION

### I. Sufficiency of the Evidence

A criminal conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *U.S. v. Whitworth*, 856 F.2d 1268, 1286 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989).

Counts 20–39 charged appellant with violating 21 U.S.C. § 841(a)(1), which provides "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally (1) to ... distribute ... a controlled substance." Doctors are liable for prosecution under this section "when their activities fall outside the usual course of professional practice." *U.S. v. Moore*, 423 U.S. 122, 124, 96 S.Ct. 335, 337, 46 L.Ed.2d 333 (1975).

■ The appellant argues that the evidence is insufficient to support his conviction on counts 20–39 because a defense witness, Dr. Wascher, testified that he also prescribed controlled substances for the undercover informants. Appellant contends that it is ironic that it "was apparently okay for Dr. Wascher to prescribe [controlled substances] for Mr. Buzzalini, but it was a criminal act for [appellant] to do the exact same thing." Appellant also points out that his expert witness, Ronald K. Siegal, a psychopharmacologist, stated that generally appellant's prescriptions were within acceptable limits of prescribing practices. Finally, appellant states that while he may have been naive or too casual, his acts were not criminal.

However, the prosecution also presented an expert witness, Dr. Alvin D. Blumberg, who outlined the normal procedure for treatment and diagnosis before prescribing any of the involved controlled substances. Dr. Blumberg indicated that a prescription for any of the involved controlled substances would not be legitimate without a

physical examination. All three undercover informants testified that at no time did appellant conduct a physical exam of them, nor did he ask for their medical histories. Moreover, when Dr. Wascher prescribed controlled substances for Mr. Buzzalini, he, unlike appellant, did perform a physical exam and inquire into Buzzalini's medical history. Finally, Dr. Blumberg indicated that appellant's actions were outside the course of professional practice.

In addition to the testimony by Dr. Blumberg, the evidence at trial also demonstrated that the appellant had issued an inordinate number of prescriptions to the undercover agents. For example, appellant wrote nineteen prescriptions for controlled substances to Agent Baken in a month, and wrote twenty-one prescriptions to Agent Buzzalini during that same time period.

When the evidence is viewed in the light most favorable to the prosecution, there is little doubt that a rational trier of fact could have found that appellant prescribed drugs to patients upon whom he had not performed physical exams, and that prescribing drugs in this fashion was outside the course of usual professional practice. Thus, sufficient evidence did exist for appellant's conviction.

## II. Severance of counts 1–19 from counts 20–39

■ Appellant complains that the counts resulting from the FBI's investigation should not have been joined with the counts resulting from the state investigation. Appellant claims that the FBI's investigation and resultant charges (Counts 1–19) involved the insurance fraud scheme while the state investigation (Counts 20–39) was concerned with the prescription of controlled substances. He contends that the misjoinder of these charges was prejudicial.

Federal Rule of Criminal Procedure 8(a) allows offenses to be joined if they are of the same or similar character. Misjoinder of charges is a question of law reviewed de

novo. *United States v. Smith*, 795 F.2d 841, 850 (9th Cir.1986), *cert. denied* 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987).

The charges resulting from the separate investigations are of a similar character in that they all revolve around allegations that appellant was acting in a criminal manner outside the usual course of his medical practice. In fact, counts 3–39 all involved distribution of controlled substances. Counts 1 and 2 are mail fraud counts resulting from appellant's scheme to defraud an insurance company.[2] Under Federal Rule of Evidence 404(b), evidence of these "other acts" would be admissible to show motive, intent, or common scheme. Thus, the charges were properly joined because they do indeed show a common scheme and intent.

Having decided that the charges were properly joined, we must address the related issue of whether the court abused its discretion by denying appellant's pretrial motion for severance.

A denial of severance will be upheld absent a showing that "joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." *U.S. v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989); *U.S. v. Armstrong*, 621 F.2d 951, 954 (9th Cir.1980). "[J]oinder is the rule rather than the exception." *Whitworth*, 856 F.2d at 1277. Appellant inexplicably argues that the testimony of the three undercover informants may have led the jury to believe that the method of prescribing drugs for these three witnesses was the appellant's ordinary method of prescribing drugs. But appellant was not charged with prescribing drugs to other patients, only the three that testified. Appellant offers no other evidence of prejudice. Accordingly, the district court properly denied appellant's motion to sever.

---

**2.** Note that while counts 3–39 all involve distribution of controlled substances, appellant seeks to sever counts 3–19 from 20–39. Thus, appellant is seeking to sever the state investigation from the federal investigation, not the mail fraud charges from the controlled substances charges. All the controlled substances charges are clearly related.

III. Suppression of evidence

Appellant contends that the warrantless search of his office after his arrest was not consensual, principally because consent was given when he was under arrest and after the agents told him that a warrant could be obtained if he refused consent. The facts pertinent to the search in the instant case are as follows: Investigator Clayton testified that on June 15, 1983, Nepolitan met with appellant and gave him the simulated marijuana. After Nepolitan left, investigators Ackerman and Ginsberg arrested appellant and advised him of his *Miranda* rights. Clayton testified that he then asked appellant about the marijuana, and when appellant claimed he did not know what Clayton was talking about, Clayton informed him that he could either give his permission to search the desk, or he would have to wait to get a search warrant. Clayton also testified that he told appellant he had the right to refuse permission. Clayton testified further that appellant told him that he had nothing to hide and told him to go ahead and search the desk. Investigator Ackerman testified that appellant said "Go ahead and search."

A trial court's finding on voluntariness should not be overturned unless it is clearly erroneous. *Whitworth*, 856 F.2d at 1279. On appeal, evidence regarding the question of consent must be viewed in the light most favorable to the fact-finder's decision. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988). A warrantless search is constitutional if conducted pursuant to the valid consent of a person in control of the premises. *Schneckloth v. Busta-monte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government has the burden of demonstrating that consent to a warrantless search was voluntary. Voluntariness is a question of fact to be determined from all the surrounding circumstances. When viewing the surrounding circumstances, "there is no single controlling criterion." *United States v. Agosto*, 502 F.2d 612, 614 (9th Cir.1974) (per curiam) (citing *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047) (issue of voluntari-

ness "remains a question of fact for determination upon the totality of the circumstances").

One factor to be considered is whether a threat to obtain a search warrant will invalidate a subsequent consent. Courts have drawn distinctions where, on one hand, an officer merely says that he will attempt to obtain a search warrant or whether, on the other hand, he says he can obtain the search warrant, as if it were a foregone conclusion. However, consent is not likely to be held invalid where an officer tells a defendant that he could obtain a search warrant if the officer had probable cause upon which a warrant could issue. *See United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir.1983), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985) (no coercion where an officer said he could obtain a warrant if consent were refused but there was ample evidence to support probable cause); *United States v. Faruolo*, 506 F.2d 490 (2d Cir.1974) (upholding a consent search where the defendant was given his *Miranda* rights, told that he had the right to refuse, and probable cause existed as to the search).

■ The fact that consent was given while under arrest does not, in and of itself, make it involuntary, especially where a defendant was informed of his right not to consent, *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988), and informed of his *Miranda* rights, *United States v. Licata*, 761 F.2d 537 (9th Cir. 1985); *United States v. Wellins*, 654 F.2d 550, 557 (9th Cir.1981).

Here, appellant was read his *Miranda* rights, was informed that he had a right to refuse consent, was not a person lacking in education or understanding, and there was no evidence of undue force or intimidation. Even if Agent Clayton made it improperly appear to the defendant that the obtaining of a search warrant was a fait accompli, this error was not fatal under the circumstances of this case since there was probable cause to obtain a warrant and it was apparent no coercion was exercised.[3]

3. Appellant, however, urges that our decision in

*United States v. Ocheltree*, 622 F.2d 992, 994 (9th

Thus, in view of all the surrounding circumstances, the district court's denial of appellant's motion to suppress was not clearly erroneous.

## IV. Suppression for subsequent search

■ On June 16, 1983, the day after appellant's arrest, Special Agent Smith visited appellant's offices with a duly authorized search warrant naming specific files to be obtained. After the agents examined the materials they obtained pursuant to the warrant, they learned that not all records called for under the warrant had been given to them. Two hours and ten minutes after initially executing the warrant, Smith returned to appellant's office to obtain the remaining files listed in the warrant. Appellant challenges this return search as unconstitutional.

The reasonableness of a search in any case must be decided "on its own facts and circumstances." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931). In *United States v. Huslage*, 480 F.Supp. 870, 875 (W.D.Pa.1979), the court held that the question is not whether there were two entries pursuant to the warrant, but rather, whether the second search was a continuation of the first. Recently, the Eighth Circuit held that the authority of a search warrant had not expired in a situation where the search warrant listed money, and officers returned for a second search several hours later and recovered money. *United States v. Carter*, 854 F.2d 1102, 1107 (8th Cir.1988). The Eighth Circuit also favorably cited *United States v. Bowling*, 351 F.2d 236 (6th Cir.1965), *cert. denied*, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966), where the Sixth Circuit held that it was permissible for law enforcement officers to return to the premises being searched the next day and seize various items pursuant to the search warrant used the previous day.

We agree with the analysis of the Eighth Circuit. Here, the entry and search two hours later for files listed on the search warrant renders the second entry a continuation of the first. Furthermore, the files obtained were not additional files not known to the magistrate, but were files specifically requested. In light of the surrounding circumstances, Special Agent Smith's return search did not violate the Fourth Amendment and the district court was correct in denying appellant's motion to suppress.

## V. Jury Instruction

■ Appellant contends that the district court improperly instructed the jury as to the law controlling this case. Specifically, appellant believes that the jury should have been instructed that the undercover agents lied to him, and as a result his diagnosis was flawed, thus precluding the government from proving that there was "no legitimate medical purpose" for appellant's prescriptions. However, appellant did not raise this objection at trial.

A party may not assign as error any portion of the jury instruction unless that party makes a timely objection. Fed.R. Crim.P. 30. Where there are no objections or requests by defense counsel, a trial court's decision on jury instructions will be reversed only if the omission of an instruction constituted plain error, after considering the jury charge in its entirety and in the context of the entire trial. *United States v. Loya*, 807 F.2d 1483 (9th Cir. 1987).

Since appellant did not raise the objection at trial, the omission of his desired instruction must amount to a grave miscarriage of justice so as to constitute plain error. *United States v. Bustillo*, 789 F.2d 1364 (9th Cir.1986). However, the record shows that the district court did indeed instruct the jury to take all the evidence into account to determine the question of "legitimate medical purpose."

Cir.1980), compels a conclusion of coercion. In *Ocheltree*, the defendant was told that if he did not consent to the search of his brief case, he would be detained and not allowed to board his airplane until a warrant could be secured. In the case at bar, Clayton's statement that the premises would have to be secured while a search warrant was being obtained did not affect appellant's detention since he had already been arrested. Accordingly, *Ocheltree* is not applicable to this case.

A controlled substance is prescribed by a physician in the usual course of his professional practice, and therefore lawful, if it is prescribed by him in good faith, in medically treating a patient. That is the issue.

. . . .

In order to determine whether or not a prescription or prescriptions were issued for legitimate medical purposes in the usual course of a physician's professional practice, you may consider all of the evidence and the circumstances surrounding the prescribing of the substances in question, any expert testimony as to what is a legitimate medical purpose in the usual course of medical practice, and any other competent evidence bearing upon the purpose for which the substances in question were prescribed.

In light of the above instruction and appellant's failure to raise the objection at trial, the district court's refusal to specifically instruct the jury that the undercover agents' lies preclude the government from proving there was no legitimate medical purpose was correct and did not constitute plain error.

AFFIRMED.