949 F.2d 400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee
v.
David Ricardo MADRIGAL-MACHADO, Jose Carmen
Villalobos-Hernandez, Defendants-Appellants.
 Nos. 90-50654, 90-50661.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1991.*
Decided Dec. 10, 1991.
 
 Before JAMES R. BROWNING, ALARCON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Villalobos and Madrigal appeal from the sentence imposed following their pleas of guilty to conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1). Each defendant was sentenced to 121 months' imprisonment on each count, to run concurrently. Villalobos and Madrigal reserved the right to appeal from the denial of their motions to suppress the evidence.
 
 
 3
 Villalobos and Madrigal seek reversal on the following grounds:
 
 
 4
 1. The district court erred in finding that U.S. Border Patrol agents did not stop Villalobos' car.
 
 
 5
 2. The district court erred in finding that the subsequent investigatory detention of Villalobos was supported by reasonable suspicion.
 
 
 6
 3. The district court erred in finding that Villalobos consented to the search of the trunk and interior of his car.
 
 
 7
 4. The district court erred in finding that the U.S. Border Patrol agent had reasonable suspicion to stop Madrigal's car.
 
 
 8
 We disagree and affirm.
 
 I.
 FACTS
 
 9
 On December 7, 1989, Border Patrol Agents Michael Graff and Jose Gutierrez were patrolling a section of Interstate Highway 8 in a marked Border Patrol car about eight miles north of the Mexican border. Both agents testified at the Motion to Suppress hearing; neither Villalobos nor Madrigal offered evidence at the hearing. The trial judge found that the agents testified truthfully. The officers testified as follows:
 
 
 10
 The agents noticed a mid-70's Monte Carlo, driven by Villalobos, traveling westbound (towards the patrol car) in the slow lane. Agent Graff had previously observed that vehicles with a large trunk space were used to smuggle aliens or narcotics. Agent Graff noticed that Villalobos was young, Hispanic, did not appear relaxed, and did not look at the patrol car as he passed it. Since the Monte Carlo fit the "smuggling profile," the agents decided to follow it.
 
 
 11
 Agent Graff turned the patrol car around on the center divider to go westbound. While waiting for traffic to clear, both agents saw a mid-70's Ford Ranchero, driven by Madrigal, also traveling westbound and in the slow lane, about 15-20 seconds behind the Monte Carlo. Both agents noticed Madrigal appeared nervous and was sitting rigidly, with both hands on the wheel. Based on these observations, Agent Graff suspected that the drivers of both cars were involved in smuggling activities. He decided to follow Villalobos' car. As the agents' vehicle passed Madrigal's car, Agent Graff decreased the speed of his vehicle, and looked carefully at Madrigal. Madrigal appeared extremely nervous and was "gripping the steering wheel so hard [his knuckles] were white." The tailgate was down although nothing was in the bed of Madrigal's vehicle. Agent Graff had read a report the previous month that cocaine had been hidden in the tailgate of a vehicle.
 
 
 12
 Agent Graff sped up to 75-80 mph to catch up with Villalobos' vehicle, then slowed down to approximately the speed limit and pulled behind Villalobos in the slow lane. Agent Graff testified they followed Villalobos for only as long as it took to call in Villalobos' license plate for a check, or about a minute; Agent Gutierrez testified it was "just a few seconds". Agent Graff testified he followed Villalobos' vehicle at a distance of about four-car lengths; Agent Gutierrez testified it was a "normal distance" of 25 feet or so. Agent Graff ran a stolen vehicle and border crossing check. While Agent Graff was waiting for a response to his request for information, Villalobos pointed to himself and pointed to the side of the road, and pulled over. Neither Agent Graff nor Agent Gutierrez had made any motion or signal to Villalobos to stop his vehicle. The agents' testimony differs as to which lights were turned on. Both agents said that lights were not turned on until after Villalobos had pulled over. Agent Graff said he turned on the rear amber lights after he stopped his vehicle. Agent Gutierrez testified that Agent Graff also turned on the red emergency lights.
 
 
 13
 Agent Graff and Agent Gutierrez approached on opposite sides of Villalobos' car, without drawing their weapons. Agent Graff asked Villalobos about his citizenship. Villalobos handed Agent Graff his amnesty card. Villalobos' hands were visibly shaking. Agent Graff noticed that two bolts used to hold the rear seat in place were lying on the rear floorboard, and that the rear seat was "ajar." Agent Graff spoke to Villalobos in Spanish. Agent Graff asked Villalobos if he could look in the trunk. Villalobos replied in Spanish, "Yes, for sure." He got out of the vehicle and unlocked the trunk. He appeared "openly eager." Nothing was in the trunk.
 
 
 14
 Agent Graff then asked if he could look in the rear seat area. Villalobos responded: "Yes, for sure." Agent Graff lifted up the loose rear seat and found kilogram-size packages. He suspected they contained narcotics.
 
 
 15
 While Agent Graff was handcuffing Villalobos, Agent Gutierrez saw Madrigal drive by. Madrigal looked over at Villalobos. Villalobos then clenched his teeth together and jerked his head to the right. This motion indicated to Agent Gutierrez that Villalobos was signaling Madrigal to keep driving and not to stop. Agent Gutierrez testified that as Madrigal drove away, he glanced back at Villalobos. Agent Gutierrez described what he had seen to Agent Graff and told him to follow Madrigal.
 
 
 16
 Agent Graff caught up to Madrigal quickly. Madrigal was driving about 45 mph in a 65 mph zone. On seeing the patrol car, Madrigal accelerated to the speed limit. Agent Graff activated his red lights. Madrigal immediately pulled over. Agent Graff approached the car and asked Madrigal his citizenship. Agent Graff lifted the tailgate and noticed it felt heavier than normal. He also noticed that there was grease on the tailgate screws and that they seemed recently stripped.
 
 
 17
 Agent Graff asked Madrigal if he could open the tailgate using a screwdriver he saw on Madrigal's floorboard. Madrigal said, "Yes, go ahead." Agent Graff disassembled the tailgate and found kilogram-sized packages identical to those in Villalobos' car.
 
 
 18
 At the suppression hearing, Villalobos argued that he was stopped without reasonable suspicion, and did not consent to the search of his car. Madrigal also argued that the stop of his car was not supported by reasonable suspicion. The district court denied the motions to suppress evidence.
 
 II.
 DISCUSSION
 
 19
 A. Villalobos' Vehicle.
 
 
 20
 Villalobos argues that his vehicle was stopped without reasonable suspicion by the Border Patrol agents. In denying the motion to suppress, the district court judge stated: "There is no question in my mind that the Monte Carlo when it stopped, the agent had not turned on his lights or siren.... [Villalobos] went over without the agents in any way, by hand signals or by the siren or red light or lights, suggesting that he should ... There is nothing in the record which suggests that Mr. Villalobos at that point in time couldn't just keep going towards San Diego. He chose to go to the side of the road. So at that point, I would hold that there was no stop...." We must accept the district court's findings of fact unless clearly erroneous. United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989) cert. denied, 110 S.Ct. 732, 107 L.Ed.2d 750 (1980). Villalobos did not testify or offer any evidence to rebut the agents' testimony. Villalobos has not demonstrated that the district court's findings were clearly erroneous. We review de novo the district court's decision that no fourth amendment seizure occurred. United States v. Kerr, 817 F.2d 1384, 1386 (9th Cir.1987).
 
 
 21
 Villalobos argues that the following facts demonstrate that his vehicle was stopped by the Border Patrol agents without reasonable suspicion: (1) the agents followed his vehicle closely at high speed while traveling down the highway; (2) he repeatedly pointed to himself and pointed to the side of the road to indicate that he believed that he was being pulled over; (3) the agents turned on their emergency lights after Villalobos had pulled over; (4) the agents approached Villalobos after he stopped; and (5) Villalobos did not feel he was free to leave under the circumstances.
 
 
 22
 The fact that Villalobos was followed at the speed limit for one minute would not indicate to a reasonable person that he was ordered to stop his vehicle. It is settled in the Ninth Circuit that the activation of flashing red lights behind a moving vehicle constitutes a stop. United States v. Morrison, 546 F.2d 319, 320 (9th Cir.1976). While the testimony is in conflict concerning whether Agent Graff turned on the emergency flashing red lights, as well as the rear amber lights, the evidence is undisputed that Agent Graff did not activate any of the lights until after Villalobos had stopped his vehicle.
 
 
 23
 When the agents approached Villalobos, their weapons were not drawn. The record does not show that the agents acted in a threatening or intimidating manner. The fact that Villalobos may have believed he was being pulled over or felt that he was not free to leave does not demonstrate that a stop occurred. The test for whether a seizure within the meaning of the fourth amendment has occurred provides that "the police can be said to have seized an individual only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573 (1988). We hold that it was not reasonable for Villalobos to believe that he was not free to leave.
 
 
 24
 B. Legality of Villalobos' Detention Following the Stop.
 
 
 25
 Villalobos argues that his detention after the stop was not supported by reasonable suspicion. The district court ruled that
 
 
 26
 After Mr. Villalobos stopped, I think the most important factor in allowing the agents to proceed with what they were doing was he noticed loose bolts and a loose back seat ... [S]eeing bolts on the seat, I think, would lead a sophisticated agent, which Mr. Graff was, to have some suspicion that something was going on.
 
 
 27
 The evidence supports the district court's findings.
 
 
 28
 Agent Graff's observation of two bolts lying on the rear floorboard, and the misalignment of the back seat, was sufficient to justify the detention of Villalobos.
 
 
 29
 The fourth amendment protects an individual from detention, unless the seizure of his or her person is supported by reasonable suspicion that the individual is involved in a criminal offense. Terry v. Ohio, 392 U.S. 1 (1968). The officers' observations of Villalobos' behavior and the loose bolts, as well as the misaligned car seat, created a reasonable suspicion that supported Villalobos' detention.
 
 
 30
 C. Validity of Villalobos' Consent.
 
 
 31
 Villalobos argues that the record does not demonstrate that he voluntarily consented to a search of his trunk. Villalobos contends that his consent was not voluntary because the agents were following Villalobos for about one minute and, after Villalobos pulled over, they immediately exited their vehicle and approached Villalobos "with a definite air of authority." Although weapons were not drawn, Villalobos alleges that the evidence shows weapons were visible. Villalobos asserts that he was not advised of his right to refuse consent, and "the atmosphere was hardly one in which consent was voluntarily given."
 
 
 32
 The Government has the burden of demonstrating that consent was voluntary. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990). On appeal, evidence regarding consent must be viewed in the light most favorable to the fact finder's decision. Id.
 
 
 33
 When Agent Graff asked Villalobos in Spanish if he could look in the trunk, Villalobos responded in Spanish, without hesitation, "Yes, for sure." Without being asked to do so, Villalobos got out of the car, walked to the back and opened the trunk. Agent Graff testified that Villalobos was "openly eager" to let Agent Graff look in the trunk. Agent Graff then asked Villalobos if he could look in the rear seat area. Villalobos again replied: "Yes, for sure." These uncontradicted facts demonstrate that Villalobos consented to the search of the interior of the vehicle. The failure to advise a defendant of his right to a search warrant does not invalidate a voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 234 (1973).
 
 
 34
 D. Validity of the Stop of Madrigal's Vehicle.
 
 
 35
 Madrigal contends that the agents did not have reasonable suspicion to stop his car. Madrigal argues that his case is analogous to United States v. Hernandez-Alvarado, 891 F.2d 1414 (9th Cir.1989). In Hernandez-Alvarado, we held that police officers did not have reasonable suspicion to justify the investigatory stop of a vehicle under the following circumstances: (1) the driver and his passengers appeared nervous; (2) the driver reduced the speed of his vehicle from 65 to 55 mph when the officers drove alongside him; (3) a two-way radio antenna was mounted on the trunk of the vehicle; (4) defendant's residence near the Mexican border was under investigation for narcotics activity; (5) the license plate bracket indicated the car had been purchased from a dealership associated with drug trafficking; and (6) the defendant's car had a large trunk. Id. at 1418. We held these factors were insufficient to justify an investigatory stop because they describe too many innocent individuals. Id. at 1418-1419.
 
 
 36
 The agents based their suspicion that Madrigal was engaged in criminal activity on the following facts: the two vehicles appeared to be driving in tandem because they were both traveling in the slow lane westbound on Interstate 8 and Madrigal's vehicle was approximately 30 seconds behind Villalobos. The agents also observed Villalobos gesture to Madrigal by clenching his teeth and jerking his head to the right. Agent Gutierrez interpreted this conduct as a signal to Madrigal to keep driving.
 
 
 37
 We have held that driving in tandem is one of the factors that may indicate illegal smuggling activity. United States v. Robert L., 874 F.2d 701, 704 (9th Cir.1989). We concluded in Robert L. that tandem driving was insufficient to establish reasonable suspicion where there was no evidence of any other connection between the two drivers. Id. In this matter, Villalobos' gesture to Madrigal as he drove by established a connection between the drivers that was absent in Robert L.
 
 
 38
 Additional factors supporting the agents' reasonable suspicion to stop Madrigal are the following: (1) Madrigal was traveling on a well-known smuggling route; (2) Madrigal appeared nervous, was sitting rigidly with both hands gripping the steering wheel, and at one point turned away from the agents; (3) the rear of Madrigal's vehicle was low although the bed of the vehicle was empty; (5) Agent Graff had read a report the previous month that cocaine had been concealed in the tailgate of a vehicle stopped at the Mexican border; and (6) Madrigal's vehicle was traveling only 45 mph in a 65 mph zone, leading Agent Graff to believe Madrigal had slowed down to wait for Villalobos, but Madrigal sped up to 65 mph as the border patrol vehicle closed the gap between the vehicles.
 
 
 39
 The totality of the circumstances demonstrates that there was reasonable suspicion to stop Madrigal's vehicle. Thus the denial of the motion to suppress was proper.
 
 
 40
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3