26 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George SHENG, Defendant-Appellant.
 No. 92-10631.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 11, 1994.*
Decided May 19, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 George Sheng appeals his conviction following jury trial for aiding and abetting the trafficking of counterfeit goods in violation of 18 U.S.C. Secs. 2320, 2 and entry of a nolo contendere plea to infringement of a copyright in violation of 17 U.S.C. Sec. 506(a). Sheng's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), which identified the following issues for review: (1) whether the district court erroneously denied a pretrial discovery motion; (2) whether Sheng voluntarily consented to two searches; (3) whether the district court erred by denying the motion for a bill of particulars; (4) whether Sheng was entrapped as a matter of law; and (5) whether sufficient evidence existed on the registration of the trademarks and intent. Sheng filed a pro se supplemental brief in which he reiterated the discovery and registration of the trademarks arguments made by counsel and raised these additional issues: (1) whether he is entitled to an appellate attorney who is a trademark specialist; (2) whether the jury returned inconsistent verdicts; and (3) whether the admission into evidence of a preliminary injunction in a companion civil suit was prejudicial error. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 * Discovery
 
 
 4
 Sheng contends that the district court committed reversible error by denying his discovery motion which sought (1) records of a Federal Trade Commission investigation of Nintendo for antitrust violations to establish an affirmative defense that Nintendo's violation of the antitrust laws disentitled it to trademark protection and (2) a cooperation agreement between the government and Nintendo to establish that the prosecution was controlled by Nintendo.
 
 
 5
 We review discovery rulings for abuse of discretion. United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990).
 
 
 6
 Pursuant to Fed.R.Crim.P. 16(a)(1)(C), a defendant is entitled to discovery of materials which are "relevant to the development of a possible defense," United States v. Clegg, 740 F.2d 16, 18 (9th Cir.1984), if the defendant makes a prima facie showing that the evidence is material, but "[n]either a general description of the information sought nor conclusory allegations of materiality suffice," Mandel, 914 F.2d at 1219.
 
 
 7
 Because Sheng failed to present facts that would tend to show that the government was in possession of information that would be helpful to the defense and the government informed the district court that no cooperation agreement existed, the court did not abuse its discretion by denying the discovery motion. See United States v. Cadet, 727 F.2d 1453, 1465 (9th Cir.1984).
 
 II
 Voluntariness of Consent to Searches
 
 8
 Sheng contends that evidence seized during two searches should have been suppressed because his consent was involuntary. This argument lacks merit.
 
 
 9
 We review for clear error a district court's finding on voluntariness. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990).
 
 
 10
 Voluntariness depends on the totality of circumstances. Id. A defendant's consent may be voluntary even if law enforcement officers inform him that if he does not consent, they will secure the premises while they obtain a search warrant. United States v. Agosto, 502 F.2d 612, 614 (9th Cir.1974) (per curiam). But if the threat amounts to an unreasonable detention, the consent is involuntary. United States v. Ocheltree, 622 F.2d 992, 994 (9th Cir.1980).
 
 
 11
 The first search occurred while Sheng was exhibiting merchandise at a trade show at a Las Vegas hotel. Customs Agent Davis asked Sheng for permission to search the booth and rental car and told Sheng that he could refuse but if he did "he would not be able to remove any of his items from his booth or from his vehicle until we attempted to obtain a search warrant." Sheng initially refused consent but after unsuccessfully attempting to contact his attorney, he signed a consent to search form. At the suppression hearing, Sheng testified that he understood the consent form and held three master's degrees.
 
 
 12
 Although Agent Davis informed Sheng that he intended to secure the premises while he attempted to obtain a search warrant, because Sheng lived near the hotel, was well-educated, and was informed he had the right to refuse, the district court did not clearly err by concluding that Sheng's consent was given voluntarily. See Agosto, 502 F.2d at 614.
 
 
 13
 The second search occurred one month later at Sheng's Las Vegas home. After surveilling a controlled delivery of counterfeit cartridges, armed customs agents approached Sheng as he was unloading boxes of cartridges from the confidential informant's truck into Sheng's rental car in the driveway. A scuffle ensued and Sheng was handcuffed, arrested, and advised of his rights. Agent Davis asked Sheng for consent to search his rental vehicle and home, stating that he would notify the United States Attorney's Office of his cooperation, but that he would impound the vehicle and not allow anything to be removed from the house while he attempted to obtain a search warrant. Sheng initially refused, but then signed the consent form.
 
 
 14
 We conclude that the district court did not err by holding that Sheng's custodial consent was given voluntarily because no undue force occurred and Sheng testified that he had been informed of his rights and understood the consent form. See United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990) (upholding voluntariness of custodial consent when defendant had been informed of right to refuse and no undue coercion occurred).
 
 III
 Bill of Particulars
 
 15
 Sheng contends that the district court erred by denying his motion for a bill of particulars on the copyright infringement charge because the indictment did not specify when or where the cartridges were "reproduced" or "distributed." Because Sheng entered a nolo contendere plea to the copyright infringement charge, he waived any alleged error relating to this pretrial motion. See United States v. Cortez, 973 F.2d 764, 766 (9th Cir.1992) (defendant cannot appeal deprivation of constitutional rights that occurred prior to entry of guilty plea); Kramer v. United States, 166 F.2d 515 (9th Cir.1948) (demand for bill of particulars waived by plea of nolo contendere).
 
 IV
 Entrapment
 
 16
 Sheng argues that the government entrapped him into selling the cartridges. Because Sheng did not request that the jury be instructed on entrapment, we review for plain error. See United States v. Freeman, 6 F.3d 586, 600 (9th Cir.1993), petition for cert. filed, 62 U.S.L.W. 2231 (U.S. Apr. 1, 1994) (No. 93-8558).
 
 
 17
 Entrapment is generally a jury question, therefore, "[t]o establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent." United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986). The district court must instruct on entrapment only if the defendant presents some evidence on both elements of the defense: government inducement and absence of predisposition. Freeman, 6 F.3d at 600.
 
 
 18
 Here, the record demonstrates that Sheng was predisposed to commit the crime prior to his contact with government agents. Wayne Grooms, a private investigator for Nintendo, testified that Sheng had offered to sell his inventory of multiple game cartridges for $4,900 at the Las Vegas trade show. According to Grooms, Sheng showed him samples of the cartridges and stated that he had an inventory in California which could be shipped the next day but that he had to be careful selling them because "you could get in trouble." Similarly, Robert Borgerson, another vendor at the trade show, testified that Sheng offered to sell multiple game cartridges before Borgerson began cooperating with the government's investigation of Sheng. Moreover, Sheng did not testify to or otherwise raise a factual issue on entrapment. Accordingly, the district court did not commit plain error by failing to sua sponte instruct the jury on entrapment. See id.
 
 V
 
 19
 Essential Elements of Trafficking in Counterfeit Goods
 
 
 20
 Sheng contends that the government failed to establish (1) valid trademark registration and (2) the requisite criminal intent. In reviewing sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991). Criminal intent may be inferred from the defendant's actions. United States v. Hernandez, 952 F.2d 1110, 1114 (9th Cir.1991), cert. denied, 113 S.Ct. 334 (1992).
 
 A. Registration of Trademark
 
 21
 Under 18 U.S.C. Sec. 2320(d)(1)(A)(ii), a counterfeit mark is one identical with or substantially indistinguishable to a mark registered with the United States Patent and Trademark Office (PTO). A trademark is registered for an initial period of ten years, however, between the fifth and sixth year the registrant must submit an affidavit stating that the mark is in use in commerce. 15 U.S.C. Sec. 1058(a); Star-kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1397 (9th Cir.1985). Failure to file the affidavit results in the automatic cancellation of the registration "at the end of six years following the date of registration." 37 C.F.R. Sec. 2.161.
 
 
 22
 Sheng argues that the government failed to establish that Nintendo had filed the affidavit for three of the games, therefore those games were not "registered" with the PTO at the time of trial.[1] The argument fails, however, because Sheng was prosecuted for criminal conduct occurring between February 26, 1991 and March 22, 1991. Even assuming that Nintendo failed to file the required affidavits on the three games and that the PTO cancelled those registrations by operation of law on the sixth anniversary of their registration, the earliest cancellation would have been April 2, 1991. See id. Therefore, any cancellation would not have affected the validity of the registration during the period of Sheng's criminal counterfeiting activity.[2]
 
 B. Criminal Intent
 
 23
 Sheng further contends that insufficient evidence existed to establish his intent to traffic in counterfeit goods because he believed that selling the cartridges was legal. The record does not support this contention. In 1990, Nintendo obtained a preliminary injunction against Sheng's business which prohibited Sheng from selling Nintendo's video games. Two weeks after Customs Agent Davis warned Sheng that selling the multiple game cartridges was illegal, Sheng agreed to sell one hundred counterfeit cartridges to Borgerson. Sheng took steps to conceal the nature of that transaction, such as using code names for the product and delivery person, because he believed his telephone might be bugged. These facts are sufficient to establish Sheng's criminal intent. See Hernandez, 952 F.2d at 1112.
 
 VI
 Assistance of Counsel on Appeal
 
 24
 Sheng argues that he is entitled to an appellate attorney who is a trademark specialist. We disagree.
 
 VII
 Inconsistent Verdicts
 
 25
 Sheng argues that the jury reached inconsistent verdicts because he was acquitted on the criminal copyright infringement count, yet convicted for trafficking in counterfeit goods. "However, whether or not the jury's verdicts are in fact inconsistent, inconsistent verdicts in a criminal case generally do not mandate reversal." United States v. Lennick, No. 93-30130, slip op. at 2599 (9th Cir. Mar. 18, 1994).
 
 VIII
 Admissibility of Evidence
 
 26
 As his final argument, Sheng argues that the admission of the preliminary injunction that Nintendo had secured against Sheng in a companion civil suit was unfairly prejudicial.
 
 
 27
 Because Sheng's attorney stated at trial that he had no objection to the introduction of this evidence, we review for plain error. United States v. Perry, 857 F.2d 1346, 1351 (9th Cir.1988).
 
 
 28
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.
 
 
 29
 The preliminary injunction was admitted during the testimony of the Nintendo's attorney, James Donohue. That Sheng had been preliminarily enjoined from selling counterfeit Nintendo video cartridges was probative of his knowledge that the tapes were counterfeit. The evidence was potentially prejudicial because the jury could have believed that the preliminary injunction conclusively established Sheng's criminal knowledge. Any potential prejudice was reduced, however, during cross examination when Sheng elicited testimony that the standard of proof in the civil suit was less than that required in the criminal case. Moreover, the district court instructed the jury that wilfulness and knowledge were issues on which the government had the burden of proof beyond a reasonable doubt. Accordingly, we conclude that the admission of the preliminary injunction did not constitute plain error. See id. (admission of a bankruptcy court opinion which determined certain property transfers were fraudulent was not plain error and jury could infer defendant's criminal intent to evade income taxes from it).
 
 
 30
 The motion of counsel to withdraw is GRANTED and the judgment is AFFIRMED.[3]
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Sheng challenges the registration of three of the nine marks: (1) Donkey Kong, registered on April 23, 1985, affidavit due by April 23, 1991; (2) Vs. Excitebike, registered January 21, 1986, affidavit due by January 21, 1992; and (3) Donkey Kong 3, registered April 2, 1985, affidavit due by April 2, 1991. According to an exhibit at trial, the PTO had cancelled Donkey Kong 3's registration for failure to file the affidavit of continuing use
 
 
 [2]
 In the reply brief, counsel apparently alleges that the government also failed to prove that the trademarks were in use. Because this issue was raised for the first time in the reply brief, we decline to consider it. See United States v. Rewald, 889 F.2d 836, 854 n. 10 (9th Cir.1989), amended, 902 F.2d 18 (9th Cir.), cert. denied, 498 U.S. 819 (1990)
 
 
 [3]
 Our independent review of the record pursuant to Penson v. Ohio, 488 U.S. 75, 83 (1988), disclosed no other issues