33 F.3d 61
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cruz YANEZ-BALDENEGRO, aka Ruben Rios-Morales, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon ALVARADO-LOPEZ, Defendant-Appellant.
 Nos. 93-10538, 93-10542.*
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1994.
Decided Aug. 15, 1994.
 
 Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Cruz Yanez-Baldenegro (Yanez) and Ramon Felipe Alvarado-Lopez (Alvarado) appeal their jury convictions for conspiracy, importation and possession of cocaine. We affirm.
 
 I. YANEZ
 A. Sufficiency
 
 3
 We reject Yanez's contention that the Government failed to prove an agreement to conspire. "The prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.) (internal quotations omitted), cert. denied, 493 U.S. 863 (1989). Moreover, "[e]very member of the conspiracy need not know every other member nor be aware of all acts committed in furtherance of the conspiracy." United States v. Taren-Palma, 997 F.2d 525, 530 (9th Cir.1993), cert. denied, 114 S.Ct. 1648 (1994).
 
 
 4
 The coordinated actions of the co-defendants in this case are strong circumstantial evidence of an agreement. See Hernandez, 876 F.2d at 778. Agent Nuckles testified that based upon his experience there are rarely unwitting participants in a drug smuggling operation because a smuggler does not want to lose control of his load. A rational jury could conclude that it was no coincidence that Yanez showed up to retrieve the pickup containing drugs.
 
 
 5
 In addition, Yanez immediately gave the Datsun a push start without examining it, despite what a mechanic would do. When Agent Morgan drove the truck, he observed that the "truck drove like the wheels were going to fall off." Yet, when Yanez drove it, he did not stop and examine the tires, as one would expect a mechanic to do, if that mechanic did not know drugs were stashed in the tires. When agents followed Yanez to the Warpath residence, they observed Yanez perform what they characterized as an "evasive" move by driving once around the park.
 
 
 6
 Yanez's claim of innocence is not consistent with the evidence; nor is it credible. He claimed that he was hired to fix the Datsun for a man named Pancho and he was to return the vehicle to Pancho in Mexico. Yet, when he could not tell agents where Pancho lived, he changed his story and explained that he was to deliver the truck to someone whose name he did not know.
 
 
 7
 Molina's statements also contradicted Yanez's version of events. Molina told agents that he went into the store; Yanez said Molina did not go into the store because he did not have a shirt on. Officer Thomas testified that Molina had a shirt on when he drove into the trailer court, but when Yanez last saw Molina at the time of the arrest, he did not have a shirt on. Furthermore, Molina stated that when they arrived at the store, Yanez told him to drive the Chevy back to Warpath; Yanez said he had told Molina they were going to pick up the Datsun. The fact that Yanez's story was riddled with inconsistencies could lead a rational jury to conclude that his claim of innocence was not credible.
 
 
 8
 We also reject Yanez's argument that because no drugs or paraphernalia were found at the Warpath residence, there was insufficient evidence to convict him. Agent Nuckles testified that it was not unusual for drug smugglers to store drugs and paraphernalia at a stash house and not at their personal residences.
 
 
 9
 Once his connection to the importation conspiracy (count one) was established, he was properly held liable for the acts of his co-conspirator, Alvarado, who imported the cocaine (count two). See United States v. Sanchez-Mata, 925 F.2d 1166, 1168 (9th Cir.1991) (regarding Pinkerton co-conspirator liability for possession).
 
 
 10
 We also conclude that there was sufficient evidence to establish Yanez's connection to the conspiracy to possess with intent to distribute cocaine (count three). Therefore, he was properly held responsible for the substantive possession offense (count four) under the co-conspiracy theory of liability. See United States v. Mares, 940 F.2d 455, 460 (9th Cir.1991) (possession conviction may be based upon co-conspirator theory of liability).
 
 B. Role in the Offense
 
 11
 We conclude that the district court did not err in failing to grant Yanez a two-point downward adjustment for his minor role in the offense. A defendant is entitled to a two-point reduction for being a "minor" participant in any criminal activity. U.S.S.G. Sec. 3B1.2(b). "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Sec. 3B1.2, comment. (n. 3).
 
 
 12
 Yanez has failed to establish that he was a minor participant. See United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990) (defendant must prove his minor participant status by a preponderance of the evidence). The fact that he had "always steadfastly denied" knowledge that drugs were concealed in the tires is insufficient to satisfy this burden. Accordingly, we affirm the district court's refusal to grant a downward reduction for his role in the offense.
 
 II. ALVARADO
 A. Severance
 
 13
 The district court did not abuse its discretion in refusing to grant Alvarado's motion for severance. See United States v. Kaplan, 895 F.2d 618, 621 (9th Cir.1990) (abuse of discretion standard of review). Federal Rule Criminal Procedure 14 requires severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 113 S.Ct. 933, 122 L.Ed.2d 317, 325 (1993). "A denial of severance will be upheld absent a showing that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." Kaplan, 895 F.2d at 621 (internal quotations omitted).
 
 
 14
 In this case, Alvarado contends that he suffered prejudice because he and his co-defendants had antagonistic defenses and because the guilt of co-defendant Yanez "rubbed-off" on him. "Mutually antagonistic defenses are not prejudicial per se." Zafiro, 122 L.Ed.2d at 325. Alvarado's defense theory was that he was an "innocent dupe" with a minor role in the scheme. Yanez's theory was also innocence (lack of knowledge) in that he claimed to be a mechanic hired to fix the Datsun. In Zafiro, the Court held that severance is not mandated even where both defendants claim innocence and each accuses the other of the crime. Id. at 325-26. "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 326.
 
 
 15
 Moreover, Alvarado's characterization of his role as an innocent dupe is not supported in the record. Indeed, he admitted to Agent Morgan that he thought there was marijuana in the truck.[1] He also told Morgan that he had been paid for two prior trips across the border. His conduct and statements do not suggest that he was merely an innocent dupe. Finally, Alvarado has not established a specific instance of prejudice resulting from the joinder. Nor has he shown what specific trial right was compromised by the joint trial. Although he argues that conflicting statements in violation of Bruton v. United States, 391 U.S. 123 (1968), denied him a fair trial, he fails to identify specific statements that fall within Bruton.
 
 
 16
 Even where there is a risk of prejudice, the Supreme Court has stated that limiting instructions may suffice to cure any prejudice. Zafiro, 122 L.Ed.2d at 325-26. Appropriate cautionary instructions include requiring the jury to "give separate consideration to each individual defendant and to each charge against him" and cautioning the jury that "[e]ach defendant is entitled to have his or her case determined from his or her own conduct and from the evidence that may be applicable to him or to her." Id. at 326 (internal quotations and brackets omitted). Because the district court gave a similar instruction in this case, any prejudice resulting from the failure to sever was cured.
 
 B. Judicial Misconduct
 
 17
 We disagree with Alvarado's contention that he should have been granted a new trial because the district court judge fell asleep during part of defense counsel's closing argument. "A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). Alvarado has failed to establish "a pervasive climate of partiality or unfairness." See United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982) (despite concern over judge's lack of impartiality and his criticism of defense counsel, defendants failed to show they were denied due process by an unfair trial). During the closing argument of co-defendant Yanez's counsel (Bloom), the district court judge apparently fell asleep. Alvarado argues that this conduct deprived him of a fair trial because it left the jurors with the impression that the defense summations were not worthy of attention. According to Alvarado, the fact that the jurors laughed during this period of time demonstrates the negative effect the judge's conduct had on the jurors. We disagree.
 
 
 18
 It is highly unlikely that the jurors perceived the judge's inattentiveness as a disparagement of defense counsel's argument. See United States v. White, 589 F.2d 1283, 1289 (5th Cir.1979) (rejected defendant's contention that trial judge sleeping during his opening argument amounted to judicial disparagement of counsel's argument which affected the jury; court noted that it was "difficult to believe that the jury would infer from this judicial somnolence any judgment concerning the validity of counsel's arguments"). "Although a judge falling asleep is unfortunate, we believe that any possible prejudice was so attentuated as to be non-existent." Id. Nor has Alvarado substantiated his belief that the judge's conduct had a negative impact on the jurors with supporting affidavits from members of the jury. Furthermore, defense counsel did not raise an objection at the point when any prejudice could have been cured.[2] Finally, counsel did not request a curative instruction at that time or the following day when he raised the formal objection.[3]
 
 
 19
 III. YANEZ & ALVARADO (PROSECUTOR'S CLOSING ARGUMENT)
 
 
 20
 We reject both appellants' contentions that the prosecutor improperly commented upon their failure to testify and improperly shifted the burden of proof. Although the Fifth Amendment prohibits the prosecutor from commenting upon a defendant's decision not to testify, a prosecutor's statements are only impermissible if they are "manifestly intended to call attention to the defendant's failure to testify, or are of such a character that the jury would naturally and necessarily take them to be a comment on the failure to testify." Mares, 940 F.2d at 461 (internal quotations and brackets omitted).
 
 
 21
 Appellants challenge several comments. When read in context, the first challenged statement cannot be fairly characterized as a comment on appellants' failure to testify. Rather, the prosecutor was responding to defense counsel's suggestion that the Government was asking the jury to do something "un-American" when she asked them to consider whether the defendants' post-arrest statements were lies. Furthermore, the prosecutor was clarifying that, despite defense counsel's suggestion to the contrary, she had not been referring to the defendants' failure to testify in her closing argument, but instead, was referring to their post-arrest statements. When fairly construed, the statements do not appear to have been "manifestly intended to call attention to [appellants'] failure to testify"; nor were they "of such a character that the jury would naturally and necessarily take [them] to be a comment on the failure to testify."[4] See United States v. Hoac, 990 F.2d 1099, 1104 (9th Cir.1993) (internal quotations omitted), cert. denied, 114 S.Ct. 1075 (1994); see also United States v. Robinson, 485 U.S. 25, 26-32 (1988) (although it is impermissible for a prosecutor, on his or her own initiative, to ask the jury to draw an inference from a defendant's silence, there is no Fifth Amendment violation where the prosecutor's reference is a fair response to a claim by the defense).
 
 
 22
 The appellants next argue that the prosecutor improperly shifted the burden of proof when she first recounted a story about the Roman and Greek legal system in which all the defendant had to do was claim innocence and then analogized that situation to the present case. These challenged statements did not improperly shift the burden of proof. Moreover, in conjunction with these statements, the prosecutor cautioned the jurors that "in our system, it's up to the Government to prove in fact [the defendants] did know." Defense counsel similarly emphasized to the jurors that the Government had the burden of proof: "[T]he defendant starts out presumed by law to be innocent. It stays that way until the Government proves the defendant is guilty beyond a reasonable doubt."; and, "The Government, and only the Government has the burden of proof." The judge also instructed the jurors that the Government always has the burden to prove the defendants guilty beyond a reasonable doubt. We find no prejudicial error.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Government need not establish that Alvarado knew the precise nature of the substance he was importing as long as it established that he knew he was importing a controlled substance. See United States v. Jewell, 532 F.2d 697, 698 (9th Cir.) (en banc), cert. denied, 426 U.S. 951 (1976)
 
 
 [2]
 Although the issue was not raised contemporaneously, Yanez's counsel raised the issue the following day at which time he moved for a mistrial
 
 
 [3]
 Alvarado's reliance upon United States v. Fernandez, 480 F.2d 726 (2nd Cir.1973), is misplaced. Unlike the judge in Fernandez, see id. at 737-38, the judge in this case did not intervene or comment on the evidence
 
 
 [4]
 Appellants also object to a statement the prosecutor made during the first few moments of her closing: "If [the defendants] are not going to admit that they knew anything, how do you [as a prosecutor prove] it?" Although the words may have been ill-chosen, the statement was not intended to call attention to appellants' failure to testify. Nor would a jury necessarily take the statement to be a comment on the failure to testify. See Mares, 940 F.2d at 461. Rather, it appears that the prosecutor was indicating to the jurors that it is difficult to prove knowledge absent direct evidence