8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert WILSON, Defendant-Appellant.
 No. 93-10138.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 20, 1993.*
Decided Sept. 29, 1993.
 
 Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert Wilson appeals his conviction following a jury trial for making a false statement in relation to the acquisition of a firearm in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(1)(B), being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and being a mental defective in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(4), 924(a)(2). Wilson contends the district court erred by denying his motion to suppress evidence, because his wife did not voluntarily consent to the search which revealed the firearms. Wilson also contends there was insufficient evidence that he possessed the firearms. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 * Consent to Search
 
 
 4
 The district court's finding that a person voluntarily consented to a search is a factual determination reviewed for clear error. United States v. Childs, 944 F.2d 491, 495 (9th Cir.1991). We view evidence regarding consent in the light most favorable to the fact-finder's decision. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990).
 
 
 5
 When a warrantless search is authorized by consent, the state must demonstrate that consent was voluntarily given, "not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). Voluntariness is a question of fact, to be determined from the totality of the circumstances. Id. at 248-49; United States v. Carbajal, 956 F.2d 924, 930 (9th Cir.1992). Among the factors to be weighed in determining voluntariness are: (1) whether the person was in custody; (2) whether the officers have their guns drawn; (3) whether the person has been given Miranda warnings; (4) whether the person was told of his or her right not to consent to the search; and (5) whether the person was told that a search warrant could be obtained. Carbajal, 956 F.2d at 930. The absence of one or more of these factors does not automatically demonstrate that consent was involuntary. Childs, 944 F.2d at 496. Evidence that no coercion was used to obtain consent and that the defendant was not lacking in education or understanding are also relevant in determining whether consent was voluntarily given. Kaplan, 895 F.2d at 622.
 
 
 6
 On February 15, 1992, several officers arrived at 1600 East Rochelle, Apartment 80, to execute a search warrant. During the search, the suspect's parents, Robert and Lori Wilson, came upstairs from their apartment and spoke to the officers. During the search, the officers called in a warrant check and discovered that there was an outstanding warrant for the defendant's arrest. The officers then arrested the defendant.
 
 
 7
 On February 19, 1992, the officers returned to Apartment 80. During the search, Lori Wilson came to Apartment 80. The officers found documents during their search which indicated that the defendant was married to another woman; these documents were shown to Lori Wilson. Some time later, an officer asked Lori Wilson if her husband kept any coins in their apartment, and she responded affirmatively. The officer then asked for her consent to look at the coins, and she agreed. In Apartment 79, Lori Wilson opened a safe for the officers to search for coins. Inside the safe, officers found a number of illegal firearms.
 
 
 8
 The district court held a hearing on Wilson's motion to suppress the evidence discovered during the search of his safe. At that hearing, Lori Wilson testified that: she was terrified throughout the incident and felt she had no choice but to consent to the search; she was overwhelmed and shocked by the officers' revelation that her husband had another wife; she was afraid that the officers would arrest her if she didn't cooperate, because they had arrested her husband; Officer Sebby physically threatened her; and she was forced to sign a written consent to the search by Officer Sebby.
 
 
 9
 Officer Sebby testified that: although Lori Wilson was initially upset about her husband's apparent marriage, she calmed down and was engaging the officers in small talk prior to being asked to consent to the search; Lori Wilson received several phone calls, both before and during the search, and called her husband's lawyer for advice about the search; Sebby repeatedly told Lori Wilson that she was not considered a suspect and would not be arrested; he told Lori Wilson that she did not have to consent to the search; he explained the written consent form to her several times and told her she did not have to sign it; no officer involved in the search ever drew his weapon; and he never threatened Lori Wilson in any way.
 
 
 10
 The district court found that Lori Wilson consented freely and voluntarily to the search. We agree. Lori Wilson was not in custody, and was told that she would not be arrested; the officers never drew their weapons; and she was told repeatedly that she did not have to consent to the search. See Carbajal, 956 F.2d at 930.[1] The officers' failure to give Lori Wilson Miranda warnings or notify her that she could require a search warrant does not render her consent involuntary. See Childs, 944 F.2d at 496. The officers' actions were not unduly coercive. Further, Lori Wilson had a degree in criminal justice, spoke to an attorney during the search, and expressly limited her written consent to the safe. She was therefore not lacking in education, and her actions demonstrated her understanding of the situation. See Kaplan, 895 F.2d at 622. Viewing the evidence in the light most favorable to the fact-finder, the district court did not clearly err by concluding that Lori Wilson voluntarily consented to the search of the safe. See Childs, 944 F.2d at 495; Kaplan, 895 F.2d at 622.
 
 II
 Sufficiency of the Evidence
 
 11
 In deciding whether the evidence is sufficient to sustain a conviction, we must view that evidence in the light most favorable to the prosecution and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 12
 Wilson contends that there was insufficient evidence to prove that he possessed the firearms found in the safe. Possession may be shown by proof of actual or constructive possession. United States v. Barron-Rivera, 922 F.2d 549, 552 (9th Cir.1991). To establish constructive possession, the prosecution must establish a sufficient connection between the defendant and the firearms to support the inference that the defendant exercised dominion and control over the firearms. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). If the premises where the firearms are found are shared by more than one person, the prosecution must show that the defendant "has knowledge of the weapon and both the power and the intention to exercise dominion and control over it." Id.
 
 
 13
 Here, the prosecution submitted evidence, in the form of receipts, testimony from gun merchants, and testimony from an agent of the Bureau of Alcohol, Tobacco, and Firearms, that Wilson purchased at least eleven of the firearms found in the safe. The prosecution also submitted evidence, in the form of testimony by Officer Sebby, that Lori Wilson stated that she owned only one of the guns found in the safe. The safe was in the apartment shared by Lori and Robert Wilson, and had a combination lock.[2]
 
 
 14
 We find this evidence sufficient to establish possession. The jury could infer knowledge of the weapons from the evidence showing that Wilson purchased many of them. The jury could infer that Wilson had access to the firearms, and the opportunity to exercise control over them, from the evidence that the safe was in an apartment that he shared with his wife, and that she denied ownership of all but one of the weapons. See Terry, 911 F.2d at 278 (finding constructive possession based in part on defendant's unhindered access to the weapon). Viewing the evidence in the light most favorable to the prosecution, we find that a rational fact-finder could have concluded that Wilson possessed the firearms discovered in the safe. See Jackson, 443 U.S. at 319; Bishop, 929 F.2d at 829.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Wilson's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Lori Wilson testified that she was never told that she had the right to refuse consent to the search. However, the district court found that Lori Wilson's testimony, especially those portions dealing with whether she voluntarily consented to the search, was "not worthy of belief." The district court found that Lori Wilson contradicted herself on cross-examination, and that her efforts to portray her encounter with the police as traumatic and terrifying were "over dramatic and inherently incredible." These findings are not clearly erroneous. See United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1298 (9th Cir.1988) (district court's determinations regarding the credibility of witnesses are reviewed for clear error)
 
 
 [2]
 Although Officer Sebby testified that Lori Wilson had told him that only she and Robert Wilson had the combination to the safe, that testimony was later stricken based on a hearsay objection