**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael FRITTS, Defendant–Appellant.**

No. 99–50728.

D.C. No. CR–98–3782–JSR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 2000.

Decided March 14, 2001.

---

Before B. FLETCHER, THOMAS, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Appellant Michael Fritts appeals his judgment of conviction after entering a guilty plea to bank robbery, in violation of 18 U.S.C. § 2113(a). Fritts argues that the district court erred in (1) denying his motion to suppress his statements on the grounds of pre-arraignment delay under 18 U.S.C. § 3501(c); (2) denying his motion to suppress his statements on the grounds of involuntariness; (3) finding that he voluntarily consented to a search of his apartment; (4) finding that the FBI agents did not violate the knock-notice rule of 18 U.S.C. § 3109 in executing the federal arrest warrant; and (5) applying a two-level specific offense characteristic upward adjustment under U.S.S.G. § 2B3.1(b)(2)(F) for a "threat of death" during the commission of a robbery. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

* This disposition is inappropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. The district court properly denied Fritts's motion to suppress his statements on the grounds of pre-arraignment delay. Rule 5(a) of the Federal Rules of Criminal Procedure requires that an arrested defendant be brought before a judicial officer "without unnecessary delay." 18 U.S.C. § 3501(c), in turn, creates a six hour "safe harbor" for confessions elicited before an arraignment. A court may "admit a statement made outside of the safe harbor if the delay was reasonable or if public policy concerns weigh in favor of admission." *United States v. Padilla Mendoza*, 157 F.3d 730, 731 (9th Cir.1998), *United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir. 1996).

The district court concluded that the thirty-two hour pre-arraignment delay in this case was reasonable because Fritts was suffering from heroin withdrawal and had to be hospitalized. Relying on our decision in *United States v. George*, 987 F.2d 1428 (9th Cir.1993), it held that "a delay caused by medical necessity does not violate Rule 5(a)." *See George*, 987 F.2d at 1431 (holding that a confession made before arraignment was admissible because medical necessity was the reason for the pre-arraignment delay). The district court did not clearly err in finding that (i) "an AUSA attempted to have Defendant arraigned before Judge Battaglia as soon as possible but that Judge Battaglia refused to arraign Defendant at the hospital as a matter of court policy;" (ii) there was no evidence that the agents purposefully delayed bringing the defendant to be arraigned so they could question him; and (iii) the agents brought the defendant to the courthouse to be arraigned the same day defendant was released.

■ 2. Nor did the district court err in denying Fritts's motion to suppress his hospital statements on the grounds of involuntariness. Considering the "totality of the surrounding circumstances," *Schneckloth v. Bustamante,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the court did not err in finding Fritts's hospital statements to have been made voluntarily. "Coercive police activity is 'a necessary predicate' to finding a confession involuntary." *United States v. Kelley,* 953 F.2d 562, 565 (9th Cir.1992) (*quoting Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Here, the district court found that "none of the evidence suggests that agents employed *any* kind of physical or psychological force to induce defendant into making statements." Fritts waived his *Miranda* rights in writing, choosing to speak with the agents. Fritts was given food, treatment, medicine, and access to doctors. Although defendant contended that he believed if he did not cooperate with the agents he would be detained indefinitely at the hospital, there was no evidence to support that belief.

■ 3. The district court did not err in finding that Fritts voluntarily consented to a search of his apartment. A person may waive his Fourth Amendment rights by consenting to a warrantless search. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. 2041. "Although the Constitution does not require 'proof of knowledge of a right to refuse as the sine qua non of an effective consent to a search,' such knowledge [is] highly relevant to the determination that there ha[s] been consent." *United States v. Mendenhall,* 446 U.S. 544, 558–59, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (*quoting Schneckloth,* 412 U.S. at 234, 93 S.Ct. 2041); *United States v. Childs,* 944 F.2d 491, 496 (9th Cir.1991). Fritts executed a written consent form, expressly permitting the apartment search. The form clearly stated that he could refuse to sign it. Fritts testified that he read the consent form, and that the FBI agent also read the form to him. Although Fritts testified that the agents told him that if he consented to the search they "would not mess with his wife," the district court did not clearly err when it found, "viewing the statement in context," that it was an assurance that Fritts's wife would not be harmed in the course of the search, and not a threat of harm if Fritts refused to consent. Given that "[k]nowledge of the right to refuse consent is highly relevant in determining whether a consent is valid," *Childs,* 944 F.2d at 496, and that our "review under the clearly erroneous standard is significantly deferential requiring a 'definite and firm conviction that a mistake has been committed,'" *Concrete Pipe & Prods. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (citation omitted), the district court did not clearly err in finding that Fritts voluntarily consented to the search of his apartment.

■ 4. The FBI agents did not violate the knock-notice rule of 18 U.S.C. § 3109 in executing the federal arrest warrant for Fritts. Section 3109 allows an officer with a warrant to "break open any outer or inner door or window of a house" only after giving "notice of his authority and purpose." Here, Fritts opened the door, and therefore the requirements of the statute were never invoked. *See United States v. Phillips,* 149 F.3d 1026, 1029 (9th Cir.1998) (holding that § 3109 "does not apply to officers who enter through open doors"), *cert. denied,* 526 U.S. 1052, 119 S.Ct. 1359, 143 L.Ed.2d 520 (1999); *United States v. Valenzuela,* 596 F.2d 1361, 1365 (9th Cir.1979) ("entry through an open door is not a 'breaking' within the meaning of the statute").

5. The district court's factual finding that Fritts made a "threat of death" during the commission of the robbery was not clearly erroneous. The government submitted the sworn affidavit of the victim, Lisa Richardson, which repeated the statement she gave the FBI shortly after the robbery. Because Richardson's identity was disclosed and her contemporaneous statement and affidavit were presumptively reliable, *United States v. Alonso*, 48 F.3d 1536, 1546 (9th Cir.1995), the district court did not abuse its discretion in applying a two-level increase to Fritts's offense level pursuant to U.S.S.G. § 2B3.1(b)(2)(F)

AFFIRMED.

B. FLETCHER, Circuit Judge, concurring in part and dissenting in part.

I concur in sections one, two, four and five. I respectfully dissent from section three, involving the consent to search. The memorandum disposition focuses on one fact in support of the finding of voluntariness: that Fritts signed a written waiver. This holding neglects other facts that strongly suggest coercion: At the time Fritts gave his "consent," he was in custody, in handcuffs, in the back of an officer's unmarked vehicle; he had not been read his Miranda rights; and he had just suffered through a disorienting, early morning arrest at the hands of six to eight agents with guns drawn. Fritts' ordeal was not materially different from other "consent" searches which have been deemed involuntary in this circuit. *See, e.g., United States v. Reid*, 226 F.3d 1020 (9th Cir.2000); *United States v. Al–Azzawy*, 784 F.2d 890, 895 (9th Cir.1985) (affirming the district court's ruling of involuntariness when defendant was ordered from his trailer, ordered to his knees at gunpoint, frisked, searched, and then asked for consent).

*Reid*, a case which was recently decided, is particularly instructive. In *Reid*, we reversed as clearly erroneous the district court's finding of voluntary consent.[1] Officers ordered the suspect, a man named Grant, against a sliding glass door, placed him in a spread eagle position, frisked him, and then handcuffed him. *Reid*, 226 F.3d at 1027. Grant was not read his *Miranda* rights. *Id.* All of the officers were armed, and one of the officers had his gun drawn. *Id.* Grant was apparently no longer at gunpoint at the time he consented. *Id.* at 1030 (dissenting opinion) (quoting the district court, "within minutes of the time Grant gave his consent, he had been held at gunpoint ...."). Not only did the majority reverse the district court, but it held that "the relevant considerations overwhelmingly favor the finding that Grant did not voluntarily consent." *Id.* at 1027. In other words, it was not a close case. We noted that in such cases, the government's burden is to show "that there was no duress or coercion, express or implied and that the consent was unequivocal and specific and freely and intelligently given." *Id.* at 1026 (internal quotation marks deleted) (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir.1990)).

*Reid* cannot be distinguished. In neither *Reid* nor this case did the government sustain its burden. This case involved the search of a home, and the majority in *Reid* reminds us of the important limits attendant upon the police in the search of a person's home. We noted that "[j]udicial concern [for] the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority." *Id.* (alteration in original) (quoting

---

1. We also held, in the alternative, that the suspect in *Reid* did not have authority to consent to the search because he was not a resident of the apartment searched.

*Shaibu*, 920 F.2d at 1426 (9th Cir.1990)). The only relevant differences between this case and *Reid* are that Fritts was told he did not have to consent, and he signed a consent form. Neither of these facts show more than "a mere acquiescence to a claim of lawful authority." *Id.* In *Reid* guns were holstered and time passed before the consent was sought. *Id.* at 1030 ("[t]he handcuffs and guns were threatening; but the officers acted to dispel any coercion Grant may have felt.") (dissenting opinion). I agree with the majority in *Reid* that the effect of such confrontation is not easily dispelled.

The majority in *Reid* thought it was an easy case; the facts "overwhelmingly favor[ed]" overruling the district court's holding as clearly erroneous. *Id.* at 1027. Our case is almost on all fours with *Reid;* we should follow it.

Even without reliance on *Reid,* I would hold that Fritts did not voluntarily consent. It is hard to think that any reasonable person in this situation—handcuffed in the back of an officer's car, still groggy from sleep and drugs, physically separated from his spouse, with the image of gun barrels still fresh in mind—would have felt he could resist the police and decline to consent. It is possible that the initial coerciveness and hostility had dissipated somewhat, but the apprehension that came from the armed arrest had not.